# EXHIBIT   1

EXHIBIT (A)

# MONEY TRANSMITTAL & ORDER FORM

A-22
REV. 4-96

To _Havana Publications_      Date _11-18-99_

Street _P.O. Box 88685_      City _Los Angeles_ State _CA_
Zip Code _90809-8685_

| QUANTITY | DESCRIPTION | AMOUNT | |
|---|---|---|---|
| 1 | IV ISBN 1-886105-19-7  S.S. Signatures | $ 34 | 95 |
| 1 | V ISBN 1-886105-20-0  S.S. Signatures | 34 | 95 |
| | | S/H  7 | 00 |
| | (310) 677-9877 | | |
| | (Religious 3 (History Books) | Total 76 | 90 |

---

**UNIT STAMP OR WITNESS SIGNATURE**

_DANIEL SMITH_      _D-215_
Inmate Name (PLEASE PRINT)      Cell

_Daniel Smith_      _BD_
Inmate Signature      Inc

STATE CORRECTIONAL INSTITUTION AT PITTSBURGH
P. O. BOX 99901    PITTSBURGH, PA. 15233

ph # 310-970-9414

# EXHIBIT  2

*EXHIBIT F*



COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
SCI-PITTSBURGH

2/18/00

SUBJECT:   **Reading Material**

TO:   *Daniel Smith*

   *8m-1187*

FROM:   *Timothy D. Collins*
   Timothy G. Collins
   Publications Review Committee

DA2015

The following listed reading materials addressed to you have been reviewed and found unacceptable for the reason circled in the listed criteria of **"Administrative Directive 814, Incoming Publications."**

Publications shall be disapproved when the publications contain the following:

1.   Information regarding the manufacture of explosives, incendiaries, weapons, escape devices or other contraband.

2.   Instructions regarding the ingredients or manufacture of poisons, drugs or intoxicating beverages.

3.   Writings which advocate violence, insurrection or guerrilla warfare against the government or any of its institutions or which create a clear and present danger within the context of the correctional institution.

4.   Materials which portray, depict or expressly encourage violent or assaultive sexual conduct, involuntary deviant sexual contact or obscene material under Administrative Directive 803.

5.   Writings which advocate, assist or are evidence of criminal activity or institution misconduct.

You have ten (10) days to appeal this decision to the Superintendent. If you do not appeal, you must make arrangements with the Mail Room to return the mail to the publisher or to your home (either, at your expense - fill out JBC-138). If you do nothing, the material will be destroyed.

TITLE

*El Libro Montenegro*

FORMAT

*Book All  1U4A5*

# EXHIBIT  3

EXHIBIT G



**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**SCI-PITTSBURGH**
**(412) 761-1955**
**February 25, 2000**

SUBJECT:  **Publication Rejection**

TO:        Daniel Smith
           BM-1187
           D-215

FROM:      Philip L. Johnson
           Superintendent

I have reviewed your rejected publication and have agreed with the decision of the Publication Review Committee. Under Administrative Directive 803, F-4, B, 1 - 9, sending or receiving correspondence containing threatening or obscene materials are prohibited. The definitions Section H outlines what is considered obscene material. Your publication falls within this definition. The new directive has the Publication Review Committee reviewing publications to determine if they will be prohibited.

PLJ:bmk

cc:        DC-15
           File

# EXHIBIT 4

## Item 2 of 2

**PREVIOUS | NEXT**
**PREVIOUS:ALL | NEXT:ALL**
**NEW SEARCH | HOME | HELP**

**S.2869**
**Title:** A bill to protect **religious** liberty, and for other purposes.
**Sponsor:** Sen Hatch, Orrin G. [UT] (introduced 7/13/2000)    Cosponsors (8)
**Related Bills:** H.R.4862
**Latest Major Action:** Became Public Law No: 106-274 [GPO: Text, PDF]

Jump to: Summary, Major Actions, All Actions, Titles, Cosponsors, Committees, Related Bill Details, Amendments

**SUMMARY AS OF:**
7/13/2000--Introduced.

**Religious Land Use** and Institutionalized Persons Act of 2000 - Prohibits any government from imposing or implementing a **land use** regulation in a manner that imposes a substantial burden on the **religious** exercise of a person, including a **religious** assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution: (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

Prohibits any government from imposing a substantial burden on the **religious** exercise of a person residing in or confined to an institution, as defined in the Civil Rights of Institutionalized Persons Act, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person: (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest. States that nothing in this Act shall be construed to amend or repeal the Prison Litigation Reform Act of 1995 (including provisions of law amended by that Act).

**MAJOR ACTIONS:**

*7/13/2000*  Introduced in Senate
*7/27/2000*  Passed/agreed to in Senate: Passed Senate without amendment by Unanimous Consent.
7/27/2000  Passed/agreed to in House: On passage Passed without objection.
9/22/2000  Signed by President.
9/22/2000  Became Public Law No: 106-274 [Text, PDF]

**ALL ACTIONS:**

**7/13/2000:**
Introductory remarks on measure. (CR S6687-6688)

**7/13/2000:**
Introduced in the Senate. Read the first time. Placed on Senate Legislative Calendar under Read the First Time.

**7/14/2000:**
Read the second time. Placed on Senate Legislative Calendar under General Orders. Calendar No. 684.

**7/27/2000:**
Passed Senate without amendment by Unanimous Consent. (consideration: CR S7774-7781; text as passed Senate: CR S7779-7781)

**7/27/2000:**
Message on Senate action sent to the House.

**7/27/2000 6:08pm:**
Received in the House.

**7/27/2000 6:20pm:**
Mr. Canady asked unanimous consent to take from the Speaker's table and consider.

**7/27/2000 6:20pm:**
Considered by unanimous consent. (consideration: CR H7190-7192)

**7/27/2000 6:24pm:**
On passage Passed without objection. (text: CR H7191-7192)

**7/27/2000 6:25pm:**
Motion to reconsider laid on the table Agreed to without objection.

**7/27/2000:**
Cleared for White House.

**9/18/2000:**
Presented to President.

**9/22/2000:**
Signed by President.

**9/22/2000:**
Became Public Law No: 106-274.

---

**TITLE(S):**  (*italics indicate a title for a portion of a bill*)

- SHORT TITLE(S) AS INTRODUCED:
  **Religious Land Use** and Institutionalized Persons Act of 2000

- SHORT TITLE(S) AS ENACTED:
  **Religious Land Use** and Institutionalized Persons Act of 2000

- OFFICIAL TITLE AS INTRODUCED:
  A bill to protect **religious** liberty, and for other purposes.

---

**COSPONSORS(8), ALPHABETICAL** [followed by Cosponsors withdrawn]:     (Sort: by date)

Sen Bennett, Robert F. [UT] - 7/13/2000     Sen Crapo, Mike [ID] - 7/26/2000

Sen Daschle, Thomas A. [SD] - 7/13/2000  Sen Hutchinson, Tim [AR] - 7/13/2000
Sen Kennedy, Edward M. [MA] - 7/13/2000 Sen Lieberman, Joseph I. [CT] - 7/13/2000
Sen Schumer, Charles E. [NY] - 7/13/2000 Sen Smith, Gordon H. [OR] - 7/14/2000

**RELATED BILL DETAILS:  (additional related bills may be indentified in Status)**

| Bill: | Relationship: |
|---|---|
| H.R.4862 | Identical bill identified by CRS |

**AMENDMENT(S):**

***NONE***

# EXHIBIT   5

Westlaw.

42 USCA § 2000cc-1                                                                    Page 1

42 U.S.C.A. § 2000cc-1

▷

**Effective: September 22, 2000**

United States Code Annotated Currentness
  Title 42. The Public Health and Welfare
    Chapter 21C. Protection of Religious Exercise in Land Use and by Institutionalized Persons

  →**§ 2000cc-1. Protection of religious exercise of institutionalized persons**

(a) General rule

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--

  **(1)** is in furtherance of a compelling governmental interest; and

  **(2)** is the least restrictive means of furthering that compelling governmental interest.

(b) Scope of application

This section applies in any case in which--

  **(1)** the substantial burden is imposed in a program or activity that receives Federal financial assistance; or

  **(2)** the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes.

CREDIT(S)

(Pub.L. 106-274, § 3, Sept. 22, 2000, 114 Stat. 804.)

LIBRARY REFERENCES

American Digest System

        Constitutional Law ☞84.5(14).

        Constitutional Law ☞84.5(14).

        Prisons ☞4(14).

        Key Number System Topic Nos. 92, 310.

RESEARCH REFERENCES

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT  6

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DANIEL R. SMITH,** | ) | |
| | ) | **Civil Action No. 00-1281** |
| **Plaintiff,** | ) | |
| | ) | |
| **V.** | ) | **Judge Arthur J. Schwab** |
| | ) | **Mag. Judge Francis X. Caiazza** |
| **SUPERINTENDENT PHILIP L.** | ) | |
| **JOHNSON; PUBLICATION REVIEW** | ) | |
| **COMMITTEE TIM G. COLLINS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DECLARATION OF GREGORY S. MOHRING

I, Gregory S. Mohring, verify that the foregoing information is true and correct to the best of my personal knowledge or information and belief.

1.    I am currently employed by the Pennsylvania Department of Corrections (DOC) in the State Correctional Institution at Fayette (SCI-Fayette) as a Corrections Officer IV (Captain).

2.    Inmate Daniel R. Smith, inmate number BM-1187, is a prisoner housed at SCI-Fayette.

3.    At the request of the Pennsylvania Office of Attorney General, I conducted a review of inmate Smith in conjunction with the above-captioned case.

4.    Specifically, I was asked to review our records with regard to a book that Smith had previously requested in the year 2000 when he was confined in the State Correctional Institution at Pittsburgh (SCI-Pittsburgh) entitled *El Libro Montenegro*.

5.    My review revealed that *El Libro Montenegro* does not appear on the SCI-Fayette banned publications list, but that inmate Smith has never requested the book while housed at this institution.

6.     It is important to note, however, that this absence from the SCI-Fayette banned publication list does not in any way indicate that the book would be permissible at this institution.

7.     The admissibility of publications into each DOC institution is subject to review by that institution's Incoming Publications Review Committee (IPRC).

8.     Each institution's IPRC is a committee comprised of personnel from that facility alone and conducts reviews of incoming publications in accordance with DOC Administrative Directive DC-ADM 803.

9.     Pursuant to DC-ADM 803, publications approved at one facility are not necessarily permitted in another facility.

10.    Thus, when an inmate is transferred, any publications in his possession are subject to review by the IPRC at his new institution.

11.    A review of *El Libro Montenegro* by the SCI-Fayette IPRC would have to be conducted in order to determine the admissibility of that book into SCI-Fayette.

12.    Neither retired SCI-Pittsburgh Superintendent Philip Johnson nor retired SCI-Pittsburgh IPRC member Tim Collins are employed at SCI-Fayette.

13.    Correspondingly, Johnson and Collins are not and cannot be members of the SCI-Fayette IPRC.

This statement and verification is made subject to the penalties of 18 Pa.C.S.A. §4904 relating to sworn falsification to authorities, which provides that if I make knowingly false statements, I may be subjected to criminal penalties.

Captain Gregory S. Mohring

Date: April 17, 2007

2

# EXHIBIT   7

COMMONWEALTH OF PENNSYLVANIA
Department Of Corrections
August 13, 1998

**SUBJECT:**    Issue of Policy, DC-ADM 803, Inmate Mail and Incoming Publications

**TO:**    Executive Staff
Superintendents
Regional Directors        Standards and Practices
Boot Camp Commander

**FROM:**    Jeffrey A. Beard, Ph.D.
Executive Deputy Secretary

Attached please find a copy of the revised DC-ADM 803, Inmate Mail and
Incoming Publications policy. The most significant changes to this document are;
the incorporation of the DC-ADM 814 Incoming Publications policy, the addition of
restrictions on racially inflammatory material and materials containing maps, that
"hard-bound" publications will only be permitted from an original source and if a
piece of mail contains a personal check and/or cash money, that the entire piece
of mail is to be returned to the sender.

Since the information contained in this policy is to be supplied to the inmates, it
was written in a single policy document format instead of the policy/manual
format. Also, since the policy is rather lengthy, an index was added to making
locating information easier.

Please ensure that a copy of this document is supplied to the staff members
needing this information and to each inmate in your facility by September 1, 1998
as to provide everyone with a thirty- (30) day notice of the policy going into effect.

I would also like to take this opportunity to thank you and your staff for the input
we received. That input helped in formulating, what we believe, is a very
comprehensive policy. If you or your staff have any questions or comments
regarding this new policy, please direct them to your respective Regional Deputy
Secretary.

As always, your cooperation is appreciated.

JAB/jds

Attachment (DC-ADM 803)

cc:    File

# EXHIBIT  8

| PA Dept. of Corrections | | DC1 Face Sheet | | Date: 04/18/2007 |
|---|---|---|---|---|
| Time: 03:33:15 PM | | *Confidential* | | Page: 1 |

| Initial( ) | | Parole Violator( ) | | Continuation( ) | | Update( ) |
|---|---|---|---|---|---|---|

| DOC # | SID # | PBPP # | Name | | | Institution |
|---|---|---|---|---|---|---|
| BM1187 | 17266411 | | Smith, Daniel R | | | Fayette |



| | | | |
|---|---|---|---|
| Race | Sex | | Date of Birth |
| Black | Male | | 01/01/1968 |
| Height | Weight | | Eyes |
| 6 ft 03 in | 220 lbs | | Brown |
| Complexion | Build | | Marital Status |
| | | | Married |
| SSN # | | Religion | |
| 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 | | Other | |
| Problematic Offenses | | YES | |
| Custody Level | | Program Codes | |
| 3 | | Y | |

| Problem Area: | | V= Verified | NV= Not Verified |
|---|---|---|---|
| Assault: V | Alcohol: V | Escape: __ | Drugs: __ |
| Suicide: __ | Sexual; __ | Psychiatric: __ | |

| | | Recomputed PV Max Date: | |
|---|---|---|---|
| | Factored Sentences | Expiration Date | |
| Minimum: | LIFE | | |
| Maximum; | LIFE | | |
| Murder (2nd Degree) | | | |
| Murder (2nd Degree) | | | |

| Priors: (UNK) Yes/No | Detainers: (NO) Yes/No | More Sentences:(UNK) Yes/No |
|---|---|---|

| Legal Address: | | Notify Address: | Charletta Smith |
|---|---|---|---|
| | 5413 Sunnyside St | | 243 Zara St. |
| | Pittsburgh PA 15207 | | Pittsburgh PA 15210 |

**Scars, Marks, Tattoos:**

**Alias:**
Skher, Khushekem Re - AKA

**Assault Escape:**

| Sex Offense( ) | Victim Killed( ) | Escape/Attempt( ) |
|---|---|---|
| Serious/Assault( ) | Violated Probation/Parole/Bail( ) | |

| Separations: (YES)Yes/No | Misconducts: (YES) Yes/No | STG: (NO ) Yes/No |
|---|---|---|

# EXHIBIT  9

**FOR IMMEDIATE RELEASE**      **COMMONWEALTH OF PENNSYLVANIA**
Jan. 3, 2007                              Department of Corrections
                                          Commonwealth News Bureau
                                          Room 308, Main Capitol Building
                                          Harrisburg, PA  17120

                                        **CONTACT:**  Susan McNaughton
                                                       (717) 975-4862

# STATE PRISON OFFICIALS TO REOPEN SCI PITTSBURGH
### *Prison Intended to Operate for Next 3 to 5 Years*

**CAMP HILL** – Department of Corrections (DOC) officials today announced that after nearly two years of being in mothball status, the State Correctional Institution (SCI) at Pittsburgh will temporarily be put into operation for the next three to five years. Corrections is planning to phase the prison into operation by July 1.

"The reopening of SCI-Pittsburgh is a necessity because the department has been facing a steady increase in its inmate receptions over the past few years," said Corrections Secretary Jeffrey A. Beard, Ph.D. "Reopening Pittsburgh was a logical step in dealing with an increasing inmate population."

The former SCI-Pittsburgh, known as Western Pen, was closed in January 2005 due to high operating costs and poor lines of sight.

Beard said SCI-Pittsburgh will be a new prison with a new mission.  The new facility will be a minimum/lower-medium security prison that will provide drug and alcohol treatment to inmates, particularly those offenders who will one day return home to the western part of the state. The opening of SCI-Pittsburgh will cost the department an additional $33 million.

Initial reopening plans call for the prison's A and B units to house 750 inmates.  If Corrections continues to experience an increase in its inmate population, plans are being made to open another two housing units to house an additional 750 inmates.  The decision to open the additional housing units would be made later this year.

"At this point, our goal is to phase in operation of the prison and to have the first group of inmates living at the prison by July 1," Beard said.

The department's Bureau of Human Resources contacted all labor groups yesterday to inform them of this decision. Corrections officials plan to use an employee recall system to allow staff with seniority to move back to SCI-Pittsburgh first. This will ensure that experienced individuals will be present and help in opening and operating the prison. Any vacancies created at other prisons as a result of reopening SCI-Pittsburgh would be filled.

In response to a press release today by Pennsylvania State Corrections Officers Association President Donald G. McNany, who said Corrections will leave officer positions vacant, Secretary Beard responded that he has every plan to hire and train officers, as well as any other classifications that are needed, and that PSCOA's concern is unfounded.

"This is something we do on an ongoing basis," Beard said. "In fact, today we have 8,673 corrections officers and only 209 vacancies. That's a vacancy rate of 2.4 percent, which is exceptional. A good vacancy rate could be described by some corrections professional as six to seven percent."

For more information about Corrections, visit www.cor.state.pa.us.


# # #


2