**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DANIEL R. SMITH,** | ) | |
| | ) | **Civil Action No. 00-1281** |
| **Plaintiff,** | ) | |
| | ) | |
| **V.** | ) | **Judge Arthur J. Schwab** |
| | ) | **Mag. Judge Francis X. Caiazza** |
| **SUPERINTENDENT PHILIP L.** | ) | |
| **JOHNSON; PUBLICATION REVIEW** | ) | |
| **COMMITTEE TIM G. COLLINS,** | ) | |
| | ) | |
| **Defendants.** | ) | **Electronically filed.** |

**BRIEF IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

**I.  STATEMENT OF THE CASE**

A.  Procedural History

Plaintiff, Daniel R. Smith, inmate number BM-1187, is a *pro se* prisoner currently incarcerated by the Pennsylvania Department of Corrections (DOC) in the State Correctional Institution at Fayette (SCI-Fayette).  Plaintiff has brought the instant action pursuant to 42 U.S.C. § 1983 against two individual who, at all relevant times, were employed by the DOC, regarding events alleged to have occurred in the year 2000 while Plaintiff was incarcerated in the State Correctional Institution at Pittsburgh (SCI-Pittsburgh).

Plaintiff initiated this matter with the filing of a Motion for Leave to Proceed *in Forma Pauperis* on June 30, 2000.  (See Docket # 1).  Plaintiff was granted leave to so proceed (see Doc. # 2) and filed his original Complaint, with several exhibits in support thereof, on April 26, 2001 (see Doc. # 5).  Plaintiff also filed an Amended Complaint –

essentially amending his damages claims and adding more exhibits – on April 26, 2001. (See Doc. # 7).

The defendants filed a Motion to Dismiss, with brief in support thereof, on July 26, 2001. (See Doc. # 14; 15). That motion was granted in part and denied in part by the Subsequent Order of Court issued March 28, 2002. (See Doc. # 20, *adopting* Report and Recommendations at Doc. # 18). Specifically, the defendants' [Doc. # 14] Motion to Dismiss was granted with regard to Plaintiff's due process and Eighth Amendment claims, and denied with regard to Plaintiff's First Amendment Free Exercise claims. (See Doc. # 14; 15). Accordingly, the defendants filed an Answer addressing Plaintiff's remaining claims on April 15, 2002. (See Doc. # 21).

The defendants next filed a Motion for Summary Judgment, with brief in support thereof, on August 26, 2002. (See Doc. # 29; 30). That motion was granted by Order of Court issued March 26, 2003. (See Doc. # 38, *adopting* Report and Recommendations at Doc. # 34).

Plaintiff subsequently appealed the [Doc. # 38] grant of summary judgment to the United States Court of Appeals for the Third Circuit, where it was docketed at 03-2014. (See Doc. # 39). Plaintiff was appointed counsel for the purpose of this appeal. (See Doc. # 41). The Third Circuit issued its Order on November 27, 2006, affirming the District Court's grant of summary judgment, but remanding the case for consideration of Plaintiff's claims pursuant to the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-(1)(a). (See Doc. # 46).

Thus, the sole issue before this Honorable Court is whether Plaintiff has stated a cognizable RLUIPA claim. This motion proceeds accordingly.

B.  Plaintiff's Claims

Plaintiff contends that he ordered a religious book entitled *El Libro Montenegro* on November 18, 1999 while he was confined in SCI-Pittsburgh.  (See Complaint at Exhibit A, (attached hereto as Exhibit 1)).  When the publication arrived at SCI-Pittsburgh it was reviewed by the institution's Incoming Publications Review Committee (IPRC).  (See Complaint, at Exhibit 4, (attached hereto as Exhibit 2)).  The IPRC determined that the book was not appropriate for Plaintiff to possess at SCI-Pittsburgh, and IPRC member, defendant Collins, notified Plaintiff of this via memorandum dated February 18, 2000.  (See Exhibit 2).

Plaintiff appealed this decision of the IPRC to SCI-Pittsburgh Superintendent defendant Johnson, who upheld the IPRC decision prohibiting the book.  (See Complaint at Exhibit G, (attached hereto as Exhibit 3).  Superintendent Johnson notified Plaintiff of his decision in a memorandum dated February 25, 2000.  (See Exhibit 3).

As discussed above, Plaintiff alleged that this denial of his ability to possess *El Libro Montenegro* violated his First Amendment Free Exercise rights (see Complaint, at III), however, as per the remand from the Third Circuit Court, the sole issue *sub judice* is whether this denial violated RLUIPA.  (See Doc. # 46).  Plaintiff demands punitive, nominal and compensatory damages, as well as injunctive and declaratory relief.  (See Complaint and Amended Complaint, *generally*).

C.  Undisputed Facts

The undisputed facts are set forth in a separate statement filed simultaneously with this brief in accordance with Local Rule 56.1.

## II.  STANDARD OF REVIEW

In ruling on a motion for summary judgment, a threshold inquiry is conducted on the need for a trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law."  Federal Rules of Civil Procedure 56(c).  See also, Celotex Corporation v. Catrett, 477 U.S. 317, 325 (1986).

The moving party bears an initial burden of showing the absence of any genuine issues of fact; the non-moving party must set forth specific facts showing that there is a genuine issue for trial.  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no genuine issue of material fact.  See Anderson, 477 U.S. at 248.  Rule 56(e) does not allow the non-moving party to rely merely upon bare assertions, conclusory allegations or suspicion.  See Fireman's Insurance Company of Newark v. DeFresne, 676 F.2d 965, 969 (3d Cir. 1982).  There is no issue for trial unless evidence in the record would permit a jury to return a verdict for the non-moving party. See Anderson, 477 U.S. at 248.  In deciding a motion for summary judgment, the court construes all facts and inferences in the light most favorable to the non-moving party. See Pollack v. AT&T, 794 F.2d 860, 864 (3d Cir. 1986).

To apply the summary judgment test, the elements of a plaintiff's *prima facie* case under the substantive law are considered.  See Anderson, 477 U.S. at 248.  Summary judgment must be granted "against a party who fails to make a showing sufficient to

4

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corporation</u>, 477 U.S. at 322.

### III.  ARGUMENT

A.      **The defendants are entitled to summary judgment with regard to Plaintiff's claims for damages on the basis of qualified immunity.**

The doctrine of qualified immunity protects government officials performing discretionary functions from personal liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).[1]

Analyzing qualified immunity in <u>Anderson v. Creighton</u>, 483 U.S. 635 (1987), the United States Supreme Court held that whether a government official could be held personally liable for conduct that allegedly violated a constitutional or statutory right depended upon the objective legal reasonableness of the action.  <u>Id</u>. at 639.  Under this standard, government officials are shielded from civil liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." <u>Id</u>.

In <u>Brown v. Grabowski</u>, 922 F.3d 1097 (3d Cir. 1990), *cert. denied*, 501 U.S. 1218 (1991), the Third Circuit interpreted <u>Anderson</u> to require analysis not only of the clear establishment of the right that an official is alleged to have violated, but also of the specific official actions alleged to have violated the right.  More recently, the Third

---

[1] An order rejecting a request for summary judgment based on qualified immunity is deemed a final judgment and subject to immediate appeal.  <u>See</u> <u>Behrens v. Pelletier</u>, 516 U.S. 299, 307 (1996); <u>Donahue v. Gavin</u>, 280 F.3d 371, 381 n. 17 (3d Cir. 2002).

Circuit has taken the standard one step further stating that "qualified immunity encompasses mistaken judgments that are not plainly incompetent." See Gilles v. Davis, 427 F.3d 197, 207 (3d Cir. 2005), *citing*, Hunter v. Bryant, 502 U.S. 224, 229 (1991).

Put succinctly, the qualified immunity analysis requires the application of a two-part test:

> "First, the court must determine whether the facts alleged show that the defendant's conduct violated a constitution or statutory right.
>
> If so, the court must then determine whether the constitutional or statutory right allegedly violated by the defendant was 'clearly established.'"

Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006), *citing*, Saucier v. Katz, 533 U.S. 194, 201 (2001). Until the question of qualified immunity is addressed, a court cannot reach the underlying merits of the case. See Gruenke v. Seip, 225 F.3d 290, 299 (3d Cir. 2000).

Here, summary judgment is appropriate on the basis of qualified immunity for several reasons. The statutory rights in question – those promulgated in RLUIPA – did not even exist when the defendants denied Plaintiff's request to possess *El Libro Montenegro*. As discussed briefly above, Plaintiff ordered *El Libro Montenegro* at SCI-Pittsburgh on November 18, 1999. (See Exhibit 1). He was notified by defendant Collins on February 18, 2000 that the IPRC at SCI-Pittsburgh had denied his request for the publication. (See Exhibit 2). Plaintiff appealed this decision by the IPRC to SCI-Pittsburgh Superintendent defendant Johnson, and Johnson notified Plaintiff that he was affirming the IPRC's decision to prohibit the book via correspondence dated February 25, 2000. (See Exhibit 3).

RLUIPA in its present form was not even introduced to the United States Senate as a bill until July 12, 2000. (See Exhibit 4). It was enacted and deemed effective roughly two months later on September 22, 2000. (See Exhibit 4; and Exhibit 5). Thus, the protections of RLUIPA did not become statutory rights to which Plaintiff could have been entitled until some seven months after the defendants denied his request to possess the publication in question, *El Libro Montenegro*. Correspondingly, it necessarily follows that RLUIPA cannot be considered to have been "clearly established" for purposes of the qualified immunity analysis discussed above, at the time that the defendants took the actions relevant to this case (i.e., on February 18, 2000 and February 25, 2000 when defendants Collins and Johnson, respectively, denied Plaintiff's request for *El Libro Montenegro*).

In any event, the defendants are protected by qualified immunity to the extent that Plaintiff's claims are somehow seen to continue beyond these initial February, 2000 denials when, as Plaintiff contends in his Complaint and Amended Complaint, he unilaterally sought appeal and / or re-review of defendants Collins' and Johnson's decisions. Although RLUIPA was enacted and became effective on September 22, 2000, it was not upheld as constitutional until the United State Supreme Court's May 31, 2005 decision in Cutter v. Wilkinson, 544 U.S. 709 (2005). Inasmuch as the instant Complaint and Amended Complaint were filed on April 26, 2001 – over 4 years before the Cutter decision – even later decisions made after the initial February, 2000 denials but prior to the filing of the instant complaints with respect to Plaintiff's perceived right to *El Libro Montenegro* did not violate law clearly established at that time.

This principle has been repeatedly applied by Federal District Courts in this, and other, Circuits. Most analogously to the facts in this case, in Scott v. Beard, a *pro se* prisoner-plaintiff sought a religious hair length exception and was denied by the corrections staff-defendants on June 24, 2000. See 2006 WL 2645150, *2 (M.D.Pa. Sep. 14, 2006). Plaintiff Scott continued to challenge the applicable corrections grooming policy well into 2001. Id., at *2-3. Plaintiff Scott subsequently brought a civil rights action specifically raising RLUIPA, among other Constitutional claims. Id., at *3. After a Court Ordered stay pending the resolution of Cutter, the Court granted the corrections staff-defendants' Motion for Summary Judgment on Plaintiff Scott's RLUIPA claims on the basis of qualified immunity, holding:

> "at the time that the events in this case took place, neither the Supreme Court nor the Court of Appeals for the Third Circuit had yet held that RLUIPA was Constitutional or that a prison grooming policy violated it. Considering the fact that the predecessor to RLUIPA, the Religious Freedom Restoration Act (RFRA), which imposed the identical strict-scrutiny standard employed by RLUIPA, had been declared unconstitutional by the Supreme Court, see City of Boerne v. Flores, 521 U.S. 507 (1997), the defendants could have reasonably questioned the validity of RLUIPA. Consequently, it is difficult to conclude that the rights created by RLUIPA were 'clearly established.'"

Scott, 2006 WL 2645150, *5. See also David v. G.J. Giurbino, 2007 WL 925802, (S.D.Cal. March 16, 2007) (*pro se* prisoner-plaintiff's RLUIPA claim dismissed in favor of the corrections staff-defendants on the basis of qualified immunity regarding the December 21, 2003 denial of a religious hair length exemption); Ragland v. Angelone, 420 F.Supp.2d 507 (W.D.Va. March 14, 2006); and Bilal v. Lehman, 2006 WL 3626808 (W.D.Wash. Dec. 8, 2006).

Thus both because statutory rights derived from RLUIPA did not exist as such at the time of the defendants' actions and because said rights cannot be considered to have been clearly established at any time prior to the filing of the instant Complaint and Amended Complaint, the defendants are entitled to qualified immunity in this case. Summary judgment should therefore be entered in favor of the defendants with regard to Plaintiff's claims for monetary damages.

      **B.**    **Plaintiff's claims for injunction and declaratory relief are moot.**

Because of the prohibition on advisory opinions implicit in Article III of the United States Constitution, federal courts can only exercise their jurisdiction if a live case and controversy exists at all phases of a proceeding. <u>See</u> U.S.C.A. Const. Art. III; <u>DeFunis v. Odegaard</u>, 416 U.S. 312, 216 (1974); <u>Ortho Pharmaceutical Corp. v. Amgen, Inc.</u>, 882 F.2d 806, 810-811 (3d Cir. 1989). The concept of case and controversy is inherently tied to the principle of mootness, in that, when there ceases to be a controversy regarding a case or claim, that case or claim becomes moot, and cannot be considered by the Court. <u>Id</u>.

Here, Plaintiff's claims for injunctive and declaratory relief are moot for several reasons. The only relevant events left in this matter – i.e., defendants Collins' and Johnson's February, 2000 denials of Plaintiff's request to possess *El Libro Montenegro* – took place at SCI-Pittsburgh. (<u>See</u> Complaint; <u>and</u> Amended Complaint). Similarly, the only defendants left in this action are the SCI-Pittsburgh Superintendent Phillip L. Johnson and an SCI-Pittsburgh IPRC member Tim G. Collins. <u>Id</u>.

However Plaintiff has since been transferred to SCI-Fayette. (See Exhibit 6, at ¶ 2). Importantly, Plaintiff has never requested permission to possess *El Libro Montenegro* at SCI-Fayette. (See Exhibit 6, at ¶ 5). As discussed briefly above, "the admissibility of publications into each DOC institution is subject to review by that institution's Incoming Publications Review Committee (IPRC)." (See Exhibit 6, at ¶ 7). Each institution's IPRC committee is comprised of personnel from that facility alone – thus, the IPRC at SCI-Fayette is comprised of SCI-Fayette employees only. (See Exhibit 6, at ¶ 8). Pursuant to the DOC policy governing the IPRC[2], "publications approved at one facility are not necessarily permitted in another facility." (See Exhibit 6, at ¶ 9). Thus, when an inmate is transferred, such as Plaintiff in this case, even publications in his possession would be subject to review by the IPRC at his new institution (in this case, SCI-Fayette). (See Exhibit 6, at ¶ 10).

*El Libro Montenegro* does not appear on the list of publications that have already been banned at SCI-Fayette, thus the admissibility of that publication at SCI-Fayette would be subject to review by the IPRC of that facility[3]. (See Exhibit 6, at ¶¶ 5-11). Moreover, both defendant Johnson and defendant Collins have retired from their

---

[2] It should be noted that, despite repeated references in the record of this case to DOC Administrative Directive DC-ADM 814 as the policy governing the IPRC, that policy was replaced by (albeit, nearly identical) DC-ADM 803 prior to the claims in this case. (See Exhibit 7).

[3] In the interest of candor it should be noted that, upon remand, undersigned counsel and the DOC began extensive efforts to locate a copy of *El Libro Montenegro* in order to evaluate the appropriateness of settlement in this matter. These efforts have been to no avail. The publishing company from whom Plaintiff ordered that publication in 1999 at SCI-Pittsburgh has since gone out of business, the book is out of print, and cannot be located on the internet. Still, should Plaintiff locate a copy and desire to possess it at SCI-Fayette, it would first have to be reviewed by the SCI-Fayette IPRC. (See Exhibit 6).

employment with the DOC. (See Exhibit 6, at ¶ 12). Even if they were still employed by the DOC as employees of SCI-Pittsburgh, they could not have affected a request by Plaintiff to possess *El Libro Montenegro* at SCI-Fayette. (See Exhibit 6, *generally*). In any event, as neither defendant Johnson nor Collins are employed at SCI-Fayette, they "are not and cannot be members of the SCI-Fayette IPRC." (See Exhibit 6, at ¶ 13).

Inasmuch as Plaintiff has never amended[4] this action to add the SCI-Fayette Superintendent or any member of the SCI-Fayette IPRC (or any other member of the SCI-Fayette staff) as defendants, Plaintiff's claims for injunctive and declaratory relief have been rendered moot by his transfer out of SCI-Pittsburgh. "In the prison context, the transfer of an inmate from the facility complained of moots claims for injunctive relief involving that facility." Santiago v. Sherman, 2007 WL 217353, *3 (W.D.Pa. Jan 25, 2007) (Slip), *citing*, Abdul-Akbar v. Watson, 4 F.3d 195 (3d Cir. 1993); Sutton v. Rasheed, 323 F.3d 236 (3d Cir. 2003). See also Panton v. Nash, 2007 WL 914078, *8 (M.D. Pa. March 26, 2007 (Slip), *citing*, Weaver v. Wilcox, 650 F.2d 22, 27 n. 13 (3d Cir. 1981); and Miskovitch v. Hostoffer, 2007 WL 433142, *2 (W.D.Pa. Feb. 6, 2007) (Slip).

The concept of an inmate's transfer mooting his claims for injunctive and / or declaratory relief has even been specifically applied in the context of RLUIPA claims. In Neal v. Lucas, the court *sua sponte* dismissed (pursuant to 28 U.S.C. §§ 1915(e)2 and

---

[4] Notably, any attempt to amend at this point would be futile. Should Plaintiff seek to amend to add SCI-Fayette defendants, his claims are not yet ripe inasmuch as he has never requested nor been denied *El Libro Montenegro* at that facility. (See Exhibit 6). Similarly, should Plaintiff seek to amend to substitute the defendants for the current SCI-Pittsburgh Superintendent and a member of the SCI-Pittsburgh IPRC, as discussed more fully below, such claims have been rendered moot by his transfer to SCI-Fayette. See Abdul-Akbar v. Watson, 4 F.3d 195 (3d Cir. 1993).

1915A) a *pro se* prisoner-plaintiff's RLUIPA claims seeking injunctive and declaratory relief related to a corrections institution's denial of his request for certain religious publications. See 75 Fed.Appx. 960 (5th Cir. 2003) (Non Precedential). The <u>Neal</u> Court held that the prisoner-plaintiff's RLUIPA claims for injunctive and declaratory relief were rendered moot when he was transferred out of the facility where the publications were denied. See <u>Neal</u>, 75 Fed. Appx 960, *citing*, <u>Herman v. Holiday</u>, 238 F.3d 660, 665 (5th Cir. 2001).

Similarly, in <u>Bilal v. Lehman</u>, the Court granted summary judgment in favor of corrections staff-defendants with regard to the prisoner-plaintiff's RLUIPA claims. <u>See</u> 2006 WL 3626808 (W.D.Wash. Dec. 8, 2006). There, Bilal's RLUIPA claims arose when he requested and was denied a religious diet exception. <u>Id</u>. During the course of the lawsuit, Bilal was transferred out of the institution where that denial took place, and the Court held that that transfer rendered moot his claims for injunctive and declaratory relief. <u>Id</u>., at *3-4.[5]

Though an exception to the case and controversy requirement may be found when the complained of harm is 'capable of repetition yet evading review,' this "is a narrow exception to the mootness principle and is limited to cases presenting two elements:

> '(1)  the challenged action was in its duration too short to
> be fully litigated prior to its cessation or expiration, and

---

[5] Interestingly, the Court in <u>Bilal</u> took a course of action nearly identical to the one advocated in the instant motion. They discussed the circuit split regarding the availability of monetary damages against individual defendants under RLUIPA, and ultimately granted summary judgment in that regard on the basis of qualified immunity. <u>See</u> <u>Bilal</u>, *supra*. The Court next held that, to the extent the individual defendants were sued for monetary damages in their official capacities, they were protected by the Eleventh Amendment, and finally, the Court determined that any claims for injunctive or declaratory relief were rendered moot by the prisoner-plaintiff's transfer to a new facility. <u>Id</u>.

(2) there [is] a reasonable likelihood that the same complaining party would be subjected to the same action again.'"

Abdul-Akbar v. Watson, 4 F.3d 195, 206 (3d Cir. 1993), *quoting*, Weinstein v. Bradford, 423 U.S. 147, 149 (1975). Neither of those elements is present here.

The Third Circuit Court dealt with a nearly-identical 'capable of repetition yet evading review' issue in Abdul-Akbar v. Watson, 4 F.3d 195 (3d Cir. 1993). In Abdul-Akbar, the prisoner-plaintiff was released from the prison where the complained-of events took place. Id. The Third Circuit determined that neither element of the 'capable of repetition yet evading review' inquiry was met because, as here, the prisoner-plaintiff "does not assert that mootness could be avoided on the ground that inmates at [the facility where the complained-of events took place] fail to remain confined in that facility for a sufficient length of time to fully litigate a legal claim. Nor does he contend that a class action (never filed by Abdul-Akbar) would be unavailing." Abdul-Akbar, 4 F.3d at 206, *citing*, Weinstein, 423 U.S. at 149.

Furthermore, the Third Circuit explicitly rejected the notion put forth by the District Court that because Abdul-Akbar "could" become re-incarcerated at the institution where the complained-of events took place, his claims were not moot, stating "[s]uch conjecture as to the likelihood of repetition has no place in the application of this exceptional and narrow grant of judicial power." Abdul-Akbar, 4 F.3d at 207, *citing*, Weinstein 423 U.S. at 148-49; and Defunis, 416 U.S. at 318-20. Whereby the Circuit Court vacated the District Court's order granting the Plaintiff injunctive relief. See Abdul-Akbar, *supra.*

The same is true in this case. Plaintiff has not brought a class action, nor has he asserted that individuals who may seek *El Libro Montenegro* at SCI-Pittsburgh in the future will be housed at that institution for so brief a period of time that they cannot litigate an RLUIPA claim in that regard to its disposition. Speculation as to whether Plaintiff "could" return to SCI-Pittsburgh is unnecessary in this case. Plaintiff is a level three inmate serving a life sentence. (See Exhibit 8). SCI-Pittsburgh closed in January 2005 and is being reopened in July 2007 as a "minimum/lower-medium security prison." (See Exhibit 9). Thus, it does not appear possible for Plaintiff to be transferred back to SCI-Pittsburgh.

As such, Plaintiff's claims for injunctive and declaratory relief are moot and summary judgment should be entered accordingly.

## IV.  CONCLUSION

WHEREFORE, it is respectfully requested that summary judgment be entered in favor of the defendants.

Respectfully submitted,

**Thomas W. Corbett, Jr.**
Attorney General

BY:    /s/  Mariah L. Passarelli

OFFICE OF ATTORNEY GENERAL    MARIAH L. PASSARELLI
6th Floor, Manor Complex    Deputy Attorney General
564 Forbes Avenue    PA I.D. No. 202469
Pittsburgh, PA  15219

(412) 565-3579    SUSAN J. FORNEY
    Chief Deputy Attorney General
    Chief Litigation Section
Date:   April 18, 2007

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DANIEL R. SMITH,** | ) | |
| | ) | **Civil Action No. 00-1281** |
| **Plaintiff,** | ) | |
| | ) | |
| **V.** | ) | **Judge Arthur J. Schwab** |
| | ) | **Mag. Judge Francis X. Caiazza** |
| **SUPERINTENDENT PHILIP L.** | ) | |
| **JOHNSON; PUBLICATION REVIEW** | ) | |
| **COMMITTEE TIM G. COLLINS,** | ) | |
| | ) | |
| **Defendants.** | ) | **Electronically filed.** |

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the within **Brief in Support of Defendants' Motion for Summary Judgment** was electronically filed with the Court and served upon the following via first-class mail:

DANIEL R. SMITH
BM-1187
SCI-Fayette
P.O. Box 9999
LaBelle, PA  15450-2200

      /s/  Mariah L. Passarelli
MARIAH L. PASSARELLI
Deputy Attorney General

OFFICE OF ATTORNEY GENERAL
6th Floor, Manor Complex
564 Forbes Avenue
Pittsburgh, PA  15219

(412) 565-3579

Date:   April 18, 2007